FILED '09 JUL 17 08:22 USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

In re Matrix
Development Corp.,

       Debtor.

09-CV-225-BR

Bankr. Case No. 08-32798-tmb11

OPINION AND ORDER

KEYBANK, N.A.,

       Plaintiff-Appellant,

v.

MATRIX DEVELOPMENT
CORP.,

       Defendant-Appellee.


LEE C. NUSICH
MARY JO HESTON
PETER D. HAWKES
THOMAS W. SONDAG
Lane Powell, P.C.
601 S.W. Second Ave, Suite 2100
Portland, OR 97204
(503) 778-2119

       Attorneys for Plaintiff-Appellant

1  -  OPINION AND ORDER

**DAVID A. FORAKER**
**SANFORD R. LANDRESS**
Greene & Markley, P.C.
1515 S.W. Fifth Ave., Suite 600
Portland, OR 97201
(503) 546-1420

Attorneys for Defendant-Appellee

**BROWN, Judge.**

This matter comes before the Court on the appeal of Plaintiff-Appellant KeyBank, N.A., from a Final Order of the Bankruptcy Court for the District of Oregon in a Chapter 11 proceeding. Pursuant to 28 U.S.C. § 158(c)(1) and Local Rule 2200-2, KeyBank objected to referral of this matter to the Bankruptcy Appellate Panel and elected to have the appeal heard by this Court. This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 158(a).

For the reasons that follow, the Court **REMANDS** this matter to the Bankruptcy Court for further proceedings consistent with this Opinion and Order.

## BACKGROUND

The parties stipulated to or otherwise agree to the following facts.

Between January 2005 and April 2007, KeyBank made several commercial real-estate loans to Matrix Development Corp. Matrix executed 12 deeds of trust in favor of KeyBank on separate

2 - OPINION AND ORDER

parcels of real estate to secure the loans from KeyBank. The parties stipulated the trust deeds contain the following identical language:[1]

> **1.2 Secured Obligations.** Borrower makes the grant, conveyance, transfer and assignment set forth in Section 1.1, and grants the security interest set forth in 1.2 for the purpose of securing the following obligations (the "Secured Obligations") in any order of priority that Lender may choose:
>
> * * *
>
> **1.2.2. Loan Documents.** Payment and/or performance of each and every other obligation of Borrower under the Note, this Deed of Trust, any construction or land loan agreement executed in conjunction therewith (the "Loan Agreement"), all other documents evidencing, securing, or otherwise governing the Loan (specifically excluding, however, for purposes of establishing the Secured Obligations, any obligations of Borrower arising solely under any guaranty of the Secured Obligations or any indemnity agreement that by its terms is not secured hereby), and any and all amendments, modifications, and supplements thereto (collectively the "Loan Documents"), the provisions of which are incorporated herein by this reference;
>
> * * *

All of the trust deeds also include Subparagraphs 1.2.3 and 1.2.4, which are set out below and are at the heart of this matter. These subparagraphs are known as the "dragnet" clauses.

---

[1] Even though the parties stipulated all 12 trust deeds contain the language at issue, KeyBank notes and Matrix does not dispute only 11 of the trust deeds actually contain the identical language of 1.2, 1.2.2, 1.2.3, and 1.2.4.

3   -   OPINION AND ORDER

None of the deeds of trust specifically reference any KeyBank debt or obligation other than the debt or obligation created under the corresponding promissory note specifically secured by that particular deed of trust. In addition, none of the promissory notes or loan agreements specifically reference any of the deeds of trust.

On June 10, 2008, Matrix filed a voluntary Chapter 11 bankruptcy petition.

On July 14, 2008, Matrix filed a motion for authorization to use cash collateral of KeyBank in which Matrix proposed, among other things, to use net cash proceeds to continue its operations from sales of one of its condominium developments (the Q) that is the subject of one of the trust deeds at issue. KeyBank opposed the Motion on the ground that the language in the trust deeds, particularly Subparagraphs 1.2.3 and 1.2.4, precludes Matrix's request because that language operates to cross-collateralize Matrix's obligations to KeyBank. The alleged result of this cross-collateralization is that the condominium development is collateral for all other obligations to KeyBank whether those obligations were incurred before or after the execution of the deed of trust, and, therefore, proceeds from the Q are not available for Matrix's use. The parties eventually settled most of the issues related to the motion, but reserved for the Bankruptcy Court the issue whether the trust-deed language

4    -   OPINION AND ORDER

operates to cross-collateralize Matrix's other obligations to KeyBank.

On July 31, 2008, the Bankruptcy Court held a hearing, and on September 10, 2008, the Bankruptcy Court issued a Letter Opinion in which it held the trust-deed language does not operate to cross-collateralize Matrix's obligations with Matrix's other obligations to KeyBank. On October 17, 2008, the Bankruptcy Court filed a final order to this effect.

On October 23, 2008, KeyBank filed its Amended Notice of Appeal and Objection to Referral to Bankruptcy Appellate Panel, and the matter was subsequently referred to this Court. The only issue before this Court is whether the Bankruptcy Court erred when it concluded the trust-deed language does not operate to cross-collateralize Matrix's obligations to KeyBank.

## STANDARDS

This Court reviews the Bankruptcy Court's conclusions of law de novo. See In re Federated Group, Inc., 107 F.3d 730, 732 (9th Cir. 1997) (citation omitted). See also In re Daniels-Head & Assoc., 819 F.2d 914, 918 (9th Cir. 1987). The Court reviews the Bankruptcy Court's factual findings under a "clearly erroneous" standard. See In re Triple Star Welding, 324 B.R. 778, 788 (9th Cir. BAP 2005). See also Fed. R. Bankr. P. 8013.

## DISCUSSION

KeyBank contends the Bankruptcy Court erred when it concluded the trust-deed language did not operate to cross-collateralize either Matrix's subsequent debt to KeyBank or Matrix's antecedent debt to KeyBank.

### I. Standards.

The parties do not dispute Oregon law governing contract construction applies in this matter.

This Court must interpret and apply Oregon law as the Oregon Supreme Court would apply it. *See S.D. Myers, Inc. v. City and County of San Francisco*, 253 F.3d 461, 473 (9th Cir. 2001). If no decision by the Oregon Supreme Court is available to guide the Court's interpretation of state law, the Court must predict how the Oregon Supreme Court would decide the issue by using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance. *Id.* If "there is relevant precedent from the state's intermediate appellate court, [however,] the federal court must follow the state intermediate appellate court decision unless the federal court finds convincing evidence that the state's supreme court likely would not follow it." *Ryman v. Sears, Roebuck and Co.*, 505 F.3d 993, 995 (9th Cir. 2007)(citing *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir. 2001)).

Under Oregon law, an "obligation and the instrument securing

it must be construed together." *Gorzeman v. Thompson*, 162 Or. App. 84, 94 (1999).

> When . . . interpret[ing] any written instrument, [the court's] objective is to ascertain the meaning that most likely was intended by the parties that entered into it. . . . [The court] ascertain[s] the meaning most likely intended by the parties by means of a three-step inquiry. [The court] begin[s] with the text of the disputed provision in the context of the instrument as a whole. In examining the text of the disputed provision, [the court] determine[s] whether that provision is ambiguous, for, if the provision according to its terms is unambiguous, [the court] enforce[s] the provision according to its terms as a matter of law. A contractual provision is ambiguous only if it is capable of more than one plausible and reasonable interpretation. If the disputed provision is ambiguous, [the court] proceed[s] to a second step that involves examining extrinsic evidence of the contracting parties' intent. If resort to such extrinsic evidence does not resolve the ambiguity, then [the court] proceed[s] to a third and final step, namely, resort to appropriate maxims of construction.

*McKay's Mkt. of Coos Bay, Inc. v. Pickett*, 212 Or. App. 7, 12 (2007)(internal quotations and citations omitted). *See also Tipperman v. Tsiatsos*, 327 Or. 539, 545-46 (1998); *Yogman v. Parrott*, 325 Or. 358, 364 (1997).

## II.  Subsequent debt.

KeyBank contends the Bankruptcy Court erred when it concluded the trust-deed language does not operate to secure subsequent debt (also known as future debt), which is debt incurred after the execution of the instrument. Specifically,

7   -   OPINION AND ORDER

KeyBank argues the Bankruptcy Court improperly applied the maxim of contract construction that provides a specific provision governs over a general provision of the trust deed when the Bankruptcy Court concluded the language of Subparagraph 1.2.3 on which KeyBank relies to secure all subsequent debt is limited by the language in Subparagraph 1.2.4.

### A. The Trust Deed provisions at issue.

Subparagraph 1.2.3 secures the following obligations:

> **1.2.3. Related Loan Documents.** Payment and/or performance of each covenant and obligation on the part of Borrower or its affiliates to be performed pursuant to any and all loan documents (the "Related Loan Documents"), that have been or may be executed by Borrower or its affiliates evidencing or securing one or more present or future loans by Lender or its affiliates to Borrower or its affiliates (collectively, the "Related Loans"), whether now existing or made in the future, together with any and all modifications, extensions and renewals thereof; provided, however, that nothing contained herein shall be construed as imposing an obligation upon Lender, or as evidencing Lender's intention, to make any Related Loan to Borrower or its affiliates;

In addition, Subparagraph 1.2.4 secures the following obligations:

> **1.2.4. Future Obligations.** Payment to Lender of all future advances, indebtedness and further sums and/or performance of such further obligations as Borrower or the then record owner of the Project or the then owner of the balance of the Collateral may undertake to pay and/or perform (whether as principal, surety, or guarantor) for the benefit of Lender, its successors or assigns,

8  -  OPINION AND ORDER

>   (it being contemplated by Borrower and Lender
>   that Borrower may hereafter become indebted
>   to Lender in such further sum or sums), when
>   such borrowing and/or obligations are
>   evidenced by a written instrument reciting
>   that it or they are secured by this Deed of
>   Trust.

### B. The Bankruptcy Court's conclusion.

The Bankruptcy Court found the words "all future advances, indebtedness and further sums and/or performance of such further obligations" in Subparagraph 1.2.4 were broad enough to cover the same obligations as set forth in Subparagraph 1.2.3. In addition, the Bankruptcy Court found the language requiring "a writing" in Subparagraph 1.2.4 rendered that clause more specific than Subparagraph 1.2.3, and, therefore, the Bankruptcy Court concluded future indebtedness on related loans from KeyBank to Matrix would only be secured by the other trust deeds when evidenced by a writing. Here it is undisputed that no such writings exist, and, therefore, the Bankruptcy Court concluded the trust-deed language does not operate to cross-collateralize subsequent debt on related loans.

### C. Analysis.

As noted, the "text of the disputed provision" must be examined "in the context of the instrument as a whole." *McKay's Mkt.*, 212 Or. App. at 12. "A contractual provision is 'ambiguous' only if it is capable of more than one plausible and reasonable interpretation." *Id.* (citing *Batzer Const., Inc. v.*

9  -  OPINION AND ORDER

*Boyer*, 204 Or. App. 309, 313 (2006)).

Here Subparagraph 1.2.4 is "capable of more than one plausible and reasonable interpretation." *Id*. First, it is capable of the interpretation the Bankruptcy Court gave it. Second, however, the words "then record owner of the Project or the then owner of the balance of the Collateral" suggest Subparagraph 1.2.4 refers only to the property secured by that particular trust deed. Collateral is defined in the trust deed in terms of the real property that is specifically secured by the trust deed, and, therefore, Subparagraph 1.2.4 could refer only to advances pertaining to the particular collateral that is specifically set forth in and is the subject of the trust deed. Accordingly, Subparagraph 1.2.4 is capable of two reasonable interpretations and, therefore, it is ambiguous.

Nevertheless, application of the maxim that the specific controls over the general is improper here for two reasons: (1) If a contract provision is ambiguous, the Court must, as noted, look to extrinsic evidence to ascertain its meaning before resorting to maxims of construction (*McKay's Mkt.*, 212 Or. App. at 12) and (2) each subparagraph is a discrete list of obligations secured by the trust deed. In effect, there is not anything on the face of the trust deed to suggest the clauses are otherwise related to each other.

In any event, even if the extrinsic evidence supports

10  -  OPINION AND ORDER

KeyBank's reading of the trust deed, "no matter how the clause is drafted, the future advances to be covered must be of the same class as the primary obligation and so related to it that the consent of the debtor to its inclusion may be inferred." *Community Bank v. Jones*, 278 Or. 647, 666 (1977). Accordingly, any obligation that is not of the same class as the obligation specifically secured by any particular trust deed would not be cross-collateralized as a matter of Oregon law. At oral argument, however, Matrix indicated there is disagreement between the parties as to whether the obligations are of the same class.

The Court concludes on this record that the Bankruptcy Court erred when it applied the maxim that the specific controls over the general to the provisions at issue and, therefore, concluded Subparagraph 1.2.4 controlled over Subparagraph 1.2.3. Accordingly, a remand is necessary for the Bankruptcy Court to consider any extrinsic evidence and to determine whether the trust-deed language operates to cross-collateralize Matrix's subsequent debt to KeyBank and, if so, to make findings as to the classes of obligation secured pursuant to *Jones*. Accordingly, a remand of the matter is necessary for the Bankruptcy Court to make those findings.

### III. Antecedent debt.

KeyBank also contends the Bankruptcy Court erred when it concluded the trust-deed language does not operate to secure

11   -   OPINION AND ORDER

antecedent debt (also known as past debt), which is debt that was incurred before the execution of the instrument.

### A.   The Bankruptcy Court's conclusion.

The Bankruptcy Court found the language of Subparagraph 1.2.3 is clear and unambiguous in its intent to cross-collateralize Matrix's antecedent obligations to KeyBank. The Bankruptcy Court, however, also concluded Subparagraph 1.2.3 is unenforceable as a matter of Oregon law.

### B.   Analysis.

In reaching its conclusion, the Bankruptcy Court relied on *In re Wollin*. 249 B.R. 555 (2000). In *Wollin*, another bankruptcy case, a credit union had included a dragnet clause similar to the one in this case in its automobile loan documents for the purpose of securing the debtor's other obligations to the credit union by making the automobiles collateral for the debtors' other obligations that existed at the time the loan agreements were executed. *Id.* at 557. The *Wollin* court concluded the antecedent debt, which was not specifically referred to in the dragnet clause, was not secured by the collateral that was the subject of the agreement. *Id.* at 560.

As noted by the *Wollin* court, however, there is not any Oregon authority directly on point with respect to antecedent debt. *Id.* Other jurisdictions handle dragnet clauses and antecedent debt in one of three ways:   (1) the "plain-meaning"

12   -   OPINION AND ORDER

rule in which the terms of the dragnet clause are enforced as written; (2) the "same-class" standard in which the terms of the dragnet clause are enforced as long as the obligations are of the same class; and (3) the "specific-reference" rule in which the terms of the dragnet clause are enforced as long as the dragnet clause specifically references the antecedent debt that is to be cross-collateralized. *Id.* The Restatement (Third) of Property § 2.4 (1997) endorses the "specific-reference" rule. According to Matrix, the Bankruptcy Court was correct to follow *Wollin* and to apply the Restatement's "specific-reference" rule because dragnet clauses are disfavored and strictly construed.

The Court, however, has not found nor have the parties provided any authority to indicate that dragnet clauses are disfavored and strictly construed under Oregon law. Moreover, the Court does not find any reason to assume Oregon courts would adopt the Restatement's specific-reference rule. *See Nelsen v. Nelsen*, 174 Or. App. 252, 258 (2001)(Oregon courts "do not literally adopt the Restatements"). In addition, the Oregon Supreme Court has held on the subject of contract construction that "if the provision according to its terms is unambiguous, [the court] enforce[s] the provision according to its terms as a matter of law." *Eagle Indus., Inc. v. Thompson*, 321 Or. 398, 405 (1995). The Court, therefore, does not find any reason to assume Oregon courts would apply the "same-class" rule to antecedent

13   -   OPINION AND ORDER

debt in light of the fact that such a rule is an exception to contract construction in Oregon that Oregon courts have only applied in the context of subsequent debt. Accordingly, this Court does not have a basis for predicting whether Oregon courts would adopt either of these rules.

The Court concludes on this record that the Bankruptcy Court erred when it concluded Subparagraph 1.2.3 does not operate to cross-collateralize Matrix's antecedent debt to KeyBank as a matter of law.

## CONCLUSION

For these reasons, the Court **REMANDS** this matter to the Bankruptcy Court for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 16th day of July, 2009.

_____
ANNA J. BROWN
United States District Judge